Patty R. PATTERSON, Anne Sneed, and Carol Patterson, Appellants,

v.

J. Kevin CHECKETT, Respondent.

No. 23719.

Missouri Court of Appeals, Southern District, Division Two.

May 2, 2001.

Jane B. Wyman, Spradling Wyman, L.L.C., Carthage, for Appellants.

F. William Joyner, Lowther, Johnson, Joyner, Lowther, Cully & Housley, L.L.C., Springfield, for Respondent..

PREWITT, Judge.

Patty R. Patterson, Anne Sneed, and Carol Patterson ("Appellants") appeal from a decision of the Jasper County Circuit Court which granted a Judgment Notwithstanding the Verdict for Appellants in the amount of $5,000 in their case against attorney J. Kevin Checkett ("Respondent"). Respondent had prepared an estate plan for Patty R. Patterson and her now deceased husband, Dr. Grover Patterson. Appellants claim error in the court's ruling that evidence on damages was inadmissible, and in its decision granting Respondent's Motion for Judgment Notwithstanding the Verdict.

## FACTS

In 1992, Dr. Patterson and Mrs. Patterson ("The Pattersons") hired Respondent, a licensed attorney with experience in estate planning, to assist them in planning their estates. The Pattersons provided Respondent with a list of their assets and asked for advice on how to designate certain assets in a trust. About 60% of the Pattersons' assets were tax-deferred accounts, such as Individual Retirement Accounts ("IRAs") and annuities. On August 25, 1992, the Pattersons executed separate, non-marital trusts, with each receiving a share in the other's trust.

Checkett sent the Pattersons a letter dated October 2, 1992, recommending where they were to place their assets. In a letter dated October 14, 1992, Checkett advised the Pattersons that in order to fully fund trusts in each of their names for $600,000 each (the amount of the estate tax credit in 1992), they would have to include some of their tax-deferred assets, which would trigger income tax. To avoid these immediate tax consequences, Dr. Patterson was to hold his IRA outside of his trust, and if he predeceased Mrs. Patterson, she could either take the IRA as a rollover or disclaim it and permit it to go into the trust.

Checkett sent a letter dated February 22, 1993, outlining what they could do with the IRA and advising that if all the transfers to the trusts recommended in the October 2, 1992 letter had been made, the matter was concluded. The Pattersons advised Checkett in March, 1993, that they had finished funding the trusts and Checkett subsequently closed their file.

The Pattersons contacted Checkett in 1997 to prepare an amendment to Dr. Patterson's trust. Dr. Patterson indicated that the amendment was satisfactory and asked again about the IRA. Checkett replied that the Keough or IRA should not be included because of the tax consequences.

Dr. Patterson was diagnosed with pancreatic cancer on June 23, 1997. The Pattersons' certified public accountant ("CPA"), Dale Rife, informed Checkett of Dr. Patterson's condition on July 8, 1997. On July 22, 1997, Rife contacted Checkett to inform him that the trust amendment needed to be signed immediately. Checkett took the amendment to the hospital that evening, but was unable to get Dr. Patterson's signature. Mrs. Patterson believed Checkett was to return the next morning, but he did not arrive before Dr. Patterson's unexpected death the next afternoon. Approximately two weeks later, Mrs. Patterson discovered Dr. Patterson's trust had not been fully funded.[1]

In September, 1997, Checkett recommended that Mrs. Patterson execute Dr. Patterson's trust post mortem. He prepared a list of assets for Mrs. Patterson to disclaim in order to fund Dr. Patterson's trust. In addition, appellants signed a

1. Incidentally, Mrs. Patterson's trust by that point was over-funded.

family agreement, agreeing to treat the trust as though it had been amended prior to Dr. Patterson's death. Appellants contend that this post-mortem estate planning caused Appellants to be taxed on $185,000 not placed in Dr. Patterson's trust. In addition, the estate incurred taxes in the amount of $59,247 due to the placement of an annuity in the trust.

Mrs. Patterson then severed her attorney-client relationship with Checkett. She and her daughters (who were beneficiaries of the trust) filed a suit for damages on February 25, 1999. The case was tried before a jury. Francis Hanna testified as an expert concerning the standard of care applicable to Checkett. Hanna testified that Checkett's failure to see that the trust was fully funded was below the standard of care. He testified that Checkett should have reviewed the entire trust when the Pattersons asked him to prepare the amendment to make sure everything was satisfactory.

Appellants also had Dale Rife, the CPA, testify. The court did not permit Rife to testify regarding income taxes paid on the annuity because there had been no evidence that placing the annuity in the trust was improper or below the standard of care, as Hanna had only testified whether the failure to fully fund the trust was below the standard of care. Mr. Rife then testified that only $414,525 had been placed in the trust, $185,485 short of what was needed to fully fund the trust. He testified that had Mrs. Patterson also died that year, there would have been an estimated tax of $72,339 owed as a result of Mr. Patterson's trust being underfunded. He admitted on cross-examination that Mrs. Patterson could have disclaimed more assets if she wanted to fully fund the trust. The actual tax consequences could not be testified to as no estate taxes had been paid to date and the charitable aspect of the trusts would have reduced any tax liability.

The judge at trial excluded evidence of damages regarding the "proper funding" of the trust. After asking what attorney fees Respondent Checkett had charged the Pattersons, which was not in evidence and which they did not receive, the jury returned a verdict for the Plaintiffs [Appellants] in the amount of $5,000. Plaintiffs filed a Motion for Additur or, in the Alternative, Motion for a New Trial on the issue of damages only, which the court overruled. The court granted Checkett's Motion for Judgment Notwithstanding the Verdict and assessed costs against the plaintiffs. At a hearing on the post-trial motions, the judge indicated that he believed "that a submissible case was made on the issue of [the]standard [of care]" but that he had a "problem" with the damages. Plaintiffs subsequently filed this appeal.

## DISCUSSION

Appellants make three points on appeal. Appellants contend in their first point that

The trial court erred in ruling that the damages, in the form of taxes, upon the disclaimed property was inadmissible because: The court refused to allow evidence that any post mortem estate planning which Mrs. Patterson elected to do would cost her a large sum of money in U.S. and state income taxes. In doing so, the court failed to find that had the estate plan been properly and fully funded, prior to Dr. Patterson's death there would have been no income tax consequences. Defendant's action caused the necessity of those post mortem transfers.

▮▮▮▮ Appellants' point fails to comply with Rule 84.04(d), which states that the point relied on "shall be in substantially the following form: 'The trial court erred in [*identify the challenged ruling or ac-*

*tion* ], because [*state the legal reasons for the claim of reversible error* ], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error* ].' " As we interpret Appellants' point, Appellants essentially contend that the trial court erred in excluding evidence of damages, in the form of tax liability, because it prevented Appellants from introducing evidence of what the tax liability would have been. In other words, Appellants fail to state any legal reasons for the claim of reversible error. Such inadequate points do not merit appellate review. In addition, Appellants failed to set forth this argument in their alternative motion for a new trial. "[I]n order to preserve a point for appellate review, [an] appellant has to raise the point in the motion for new trial." *Sears v. Dent Wizard Intern. Corp.*, 13 S.W.3d 661, 665 (Mo.App.2000). *See also* Rule 84.13(a). Appellants' first point is denied.

Appellants argue in their second point that "[t]he trial court erred in granting defendant's Motion for Judgment Notwithstanding the Verdict because: when viewed in the light most favorable to the plaintiff, giving the plaintiff the benefit of all reasonable inferences there is room for reasonable minds to differ on the issues of damages." This point also fails to conform to Rule 84.04(d) as it fails to explain how the legal reasons, in the context of this case, support the claim of reversible error; but as we can at least ascertain the legal argument Appellants are trying to make, we will address the point.

 We affirm the trial court's grant of a judgment notwithstanding the verdict only if the plaintiff(s) failed to make a submissible case. *Kinetic Energy Development Corp. v. Trigen Energy Corp.*, 22 S.W.3d 691, 697 (Mo.App.1999), *Faust v. Ryder Commercial Leasing & Services*, 954 S.W.2d 383, 387 (Mo.App.1997). Thus,

the trial court's grant of the motion is proper if "the evidence does not support one or more elements of the plaintiff's case." *Kinetic Energy*, 22 S.W.3d at 697. "In order to make a submissible case, the plaintiff must present substantial evidence supporting each element of his or her claim." *Id.* We review the evidence in the light most favorable to the plaintiff, giving the plaintiff "the benefit of all reasonable inferences that can be drawn from the evidence, while disregarding all unfavorable evidence and inferences." *Faust*, 954 S.W.2d at 388.

 The elements of a claim for legal malpractice are: "(1) an attorney-client relationship; (2) negligence or breach of contract by the defendant; (3) proximate causation of plaintiff's damages; (4) damages to the plaintiff." *Klemme v. Best*, 941 S.W.2d 493, 495 (Mo. banc 1997). A legal malpractice action "is founded on an attorney's duty to exercise due care or to honor express contract commitments." *Id.* To prove negligence, the second element of a legal malpractice claim, one must show that there was a "legal duty on the part of the defendant to conform to a certain standard of conduct to protect others against unreasonable risks" and "a breach of that duty" which was the proximate cause of damages suffered by the plaintiff. *See Deuschle v. Jobe*, 30 S.W.3d 215, 218 (Mo. App.2000) (quoting *Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc./Special Prod., Inc.*, 700 S.W.2d 426, 431 (Mo. banc 1985)).

 At trial, Appellants set forth evidence establishing the existence of an attorney-client relationship between Respondent and the Pattersons and that by virtue of that relationship, Respondent owed the Pattersons a certain standard of care. Appellants presented expert testimony that Respondent's failure to fully fund Dr. Patterson's trust fell below the standard of

care; however, there was no expert testimony that the omission of the tax-deferred assets from the trust fell below any standard of care. Appellants failed to present any witness who could testify regarding the proper placement of the annuities or any tax consequences incurred by the allegedly misplaced annuity. Additionally, there was insufficient evidence at trial to establish that Appellants suffered any damages because of the Respondent's conduct. The preceding facts make clear that the Pattersons lacked sufficient assets to fully fund both of their trusts without including annuities on which they would have to pay income taxes if they were placed into the trust. Respondent advised them several times of this problem. Under these circumstances, Respondent cannot be held responsible for any tax consequences resulting from the placement of such an annuity into the trust. Finding that Appellants failed to make a submissible case, we conclude that the trial court's order granting Respondent's after-trial motion was not in error. Point II is denied.

Appellants argue in their third point that they are entitled to a new trial "because: the trial court erred in not allowing evidence to reach the jury regarding damages in the form of taxation suffered by Appellant due to [Respondent's] negligence." This point is essentially the same as Appellants' first point and is likewise deficient. In addition, by not setting forth this argument in their alternative motion for a new trial, the point is not preserved for our review. Point III is denied.

The judgment is affirmed.

GARRISON and RAHMEYER, JJ., concur.