Dennis PAYNE, Appellant–Respondent,

v.

CITY OF ST. JOSEPH, Missouri, Respondent–Appellant.

Nos. WD 61769, WD 61793.

Missouri Court of Appeals, Western District.

March 23, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 27, 2004.

Application for Transfer Denied June 22, 2004.

446

Mark E. Parrish, Lee's Summit, Richard L. Rollings, Jr., Ozark, MO, for appellant-respondent.

R. Todd Ehlert and Sharon Kennedy, St. Joseph, MO, for respondent-appellant.

Before EDWIN H. SMITH, P.J., and HOLLIGER and HARDWICK, JJ.

EDWIN H. SMITH, Presiding Judge.

Dennis Payne appeals[1] from the judgment notwithstanding the verdict (JNOV) of the Circuit Court of Buchanan County for the respondent, City of St. Joseph, Missouri, on his petition in tort for damages for personal injuries he suffered from a fall at a landfill operated by the respondent. In his petition, the appellant alleged

that the respondent was negligent in failing to erect a barricade around the transfer station at the landfill to prevent his fall, and that the lack of a barricade constituted a dangerous condition of the property such that the respondent was not entitled to sovereign immunity, in accordance with § 537.600.1(2).[2] The jury returned a verdict finding the appellant 75% at fault and the respondent 25% at fault, and assessing total damages of $200,000.

The appellant raises two points on appeal. In both points, he claims that the trial court erred in granting the respondent JNOV on the basis that it was entitled to sovereign immunity. In Point I, he claims that the respondent was not entitled to sovereign immunity on his claim because the lack of a barricade around the transfer station dumpsters, into which he fell, constituted a dangerous condition of the property, waiving the respondent's sovereign immunity, as provided in § 537.600.1(2). In Point II, he claims that the respondent was not entitled to sovereign immunity because the operation of the landfill by the respondent was a proprietary, not a governmental function, which was not protected by sovereign immunity.

Because we are to affirm the trial court's grant of a JNOV on any basis alleged in the motion that is supported by the record, *Faust v. Ryder Commercial Leasing & Services*, 954 S.W.2d 383, 388 (Mo.App.1997), and because we find that even if the respondent was not entitled to sovereign immunity, the appellant failed to make a submissible case on his claim by failing to present evidence establishing an

1. In the event this court reversed the trial court's grant of summary judgment for the respondent, the respondent cross-appealed the denial of its motion for new trial, raising six claims of error. However, inasmuch as we affirm the trial court's grant of the respon-

dent's motion for JNOV, it is unnecessary for us to address the respondent's cross-appeal.

2. All statutory references are to RSMo 2000, unless otherwise indicated.

essential proof element of his claim, causation, we affirm.

### Facts

On January 28, 1999, the appellant, who was employed by Boston House and Window, located in St. Joseph, Missouri, was dropping off, in the course of his employment, a load of debris at the City of St. Joseph Landfill, a facility that was owned and operated by the respondent. When members of the public use the landfill, they dispose of their trash at a "transfer station," which is designed for people to back their trucks or other vehicles onto a concrete pad, and then, while standing either on the pad or in the back of the truck, to manually throw their trash into dumpsters located below the pad.

Upon arriving at the transfer station and backing his truck to the edge of the pad on January 28, 1999, the appellant began throwing trash into the dumpsters from the cargo area of his truck. While attempting to throw a carpet cleaning machine out of the back of the truck, the appellant lost his balance and fell at least ten feet into the dumpsters below, breaking his left leg. As a result, he underwent surgery to repair his knee, as well as extensive rehabilitation. At the time of his fall, there was no barricade or handrail around the transfer station.

On March 1, 2000, the appellant filed a petition for damages in the Circuit Court of Buchanan County, naming the respondent, the mayor, and the director of public works, as defendants. The petition alleged that the lack of a barricade around the transfer station at the landfill was a dangerous condition, and that the defendants were negligent in that they had actual or constructive notice of the dangerous condition and failed to remedy or warn of the unsafe condition. On March 22, 2000, the defendants filed an answer to the appellant's petition. On November 14, 2001, the appellant voluntarily dismissed his claims against the mayor and the director of public works, leaving the respondent as the sole defendant.

The case was tried to a jury on May 13–14, 2002. William Blacketer, the superintendent of solid waste and recycling for the City of St. Joseph, was called as a witness by the appellant. He testified that there were two ways in which people using the transfer station unloaded their trucks. Some stood on the ground and reached into the truck for the trash to be dumped, while others stood inside the truck itself, while throwing trash into the dumpsters below. He also was allowed to testify, over the respondent's objection, that prior to the appellant's fall, the respondent had made plans to install a handrail at the transfer station and that the handrail was installed after the appellant's accident. He stated that the handrail was built for two purposes: (1) to "minimize the chance of somebody standing on the ground falling into the dumpster," and, (2) to give users of the transfer station "something to back up to to judge how far the back of their vehicle is." The parties stipulated that the top of the handrail was 4'2" above the concrete pad of the transfer station.

On direct examination, the appellant testified concerning the lack of a barricade or handrail around the transfer station:

Q. And what in the way of any sort of, of device or post was there to provide any sort of handhold?

A. Nothing.

Q. Would it have made a difference?

A. Well, I think if a person, if a person had a chance to grasp at something, he might, he might be able to save some of the fall. I mean, you know, he, he might bruise hisself up a little bit, but maybe

he might not break a leg or a neck or a back.

On cross-examination, when questioned about the lack of a barrier or barricade, the appellant testified:

Q. And you are suggesting to this jury that there should have been some sort of barricade in place to keep you from falling in, is that correct?

A. Well, I don't think that's initially what I meant, you know, on that particular thing, but—

Q. Tell me what you did mean.

A. Well, I've—just, uh, what, what I've always, what I've always thought, you know, that if, you know—if there might've been something there, you know, it would save somebody a little bit of fall or whatever, then it might've, it might've prevented something.

Q. What kind of thing? What are you, what are you, what are you—

A. I have no idea.

Q. I don't either. Can you tell the jury anything?

A. I think what they came up with [the handrail installed by the respondent after the accident] is a little bit ridiculous, but, I mean, you know—

Q. You think it's ridiculous?

A. That—what, what they, what they, what they have designed since then I don't think would've—I don't, you know I just don't—I don't know if that would've helped or not. So therefore I'm, I'm not trying insinuate anything.

Q. Okay. You would agree that when you were five to five and a half feet above ground level in the box of your truck that that would've put you above the, above the 4.16 feet that that barricade extended? Would you agree with that?

A. Yes, sir.

Q. So that even if that barricade had been there that day, it would not have prevented you from falling, because you were above it, correct?

A. There again, maybe, you know, I might've had the chance to reach out and grab the lower part of it or something, who knows.

Q. Haven't you said, though, before that you didn't have time to grab onto anything because it happened so fast?

A. But, but if, if the—if the possibility is there, you know, things happen.

Q. Things happen. Isn't it true that previously you stated that you did not have time to grab onto anything because it happened so fast?

A. There was nothing in the truck to grab onto. There wasn't nothing, period, you know, except maybe the concrete curb.

Q. And you're, and you're suggesting to this jury that if something had been there that you might have been able to grab onto it and not fall in?

A. Pure speculation. I don't know.

Q. Exactly. Now, if something had been in place, are you suggesting that it would've had to have been tall enough to prevent you from falling out of the box of your truck that was five to five and a half feet tall?

A. If something would've been higher than that? Is that what you're—

Q. Are you suggesting that a barricade or railing or fall prevention device should have been high enough to keep you from falling out of the back of your truck?

A. No. There, there—you know, I'm not saying that either, but, you know, that's, that's neither here nor there, as far as I'm concerned, because I, you know—I just don't know. I don't know one way or the other. I'm not a, I'm not

a architect. I don't know how to design things like that.

Q. Okay, if we did have something in place that was tall enough to prevent you from falling out of the back of the truck, that would've made it very difficult for anybody to throw their debris over into the dumpsters, correct?

A. Yes, it would.

Q. You put an eight-foot, ten-foot tall wall around those dumpsters, it's not going to be useful for people to throw their trash into, is it?

A. No, it's not.

The testimony of Blacketer and the appellant was the only evidence which the appellant presented at trial relating to the question of whether a barricade would have prevented his injuries.

The jury returned a verdict finding the appellant 75% at fault and the respondent 25% at fault, and assessing the appellant's damages at $200,000. On June 20, 2002, the respondent filed a motion for a JNOV, alleging, *inter alia*, that a failure to erect a barricade around the transfer station did not constitute a "dangerous condition" for the purposes of § 537.600.1(2), and, therefore, there was no waiver of sovereign immunity by the respondent. The motion also alleged:

10. Plaintiff has submitted no evidence as to the size or type of barricade necessary to prevent his fall, or the effect a barricade would have had on the use of the transfer station for its intended purpose. *Ferguson v. Ginn and City of Ellington*, 652 S.W.2d 295 (Mo.App. S.D. 1983). Rather, Plaintiff speculated that *if* something had been there, it *might* have prevented his fall.

11. There was insufficient evidence to support Plaintiff's claims that his damages were directly and proximately caused by Defendant.

Alternatively, the respondent moved for a new trial.

On August 3, 2002, the trial court entered a JNOV in favor of the respondent, finding that "the alleged failure of the City to design the transfer station so as to include a guardrail, as a matter of law, failed to state a cause of action under the dangerous condition exception to the immunity granted the City under RSMo. § 537.600.1(2)." The trial court denied the respondent's motion for new trial.

This appeal followed.

**I.**

In both of his Points Relied On, the appellant claims that the trial court erred in entering JNOV for the respondent on the appellant's claim for damages on the basis that the respondent was entitled to sovereign immunity, claiming in Point I that the respondent's sovereign immunity was waived under the dangerous condition exception of § 537.600.1(2), or in the alternative, claiming in Point II that sovereign immunity did not apply in the first instance because the respondent's operation of the landfill transfer station was a proprietary, not a governmental function. Ultimately, however, in determining this appeal, we need not decide whether the appellant's claim was barred by sovereign immunity in that the record supports the fact that the trial court's grant of the respondent's motion for JNOV was correct on another ground alleged in the respondent's motion, the failure to establish causation, and we are to affirm on any proper ground alleged in the motion. *Faust*, 954 S.W.2d at 388.

We will affirm the trial court's grant of a JNOV only if the plaintiff failed to make a submissible case. *Id.* at 387. In reviewing for a submissible case, we view the evidence in the light most favorable to the plaintiff, giving the plaintiff the

benefit of all reasonable inferences that can be drawn from the evidence, while disregarding all unfavorable evidence and inferences. *Id.* at 388. Because the law favors reversal of a JNOV, we will reverse the grant of a JNOV, "unless the favorable evidence and inferences are so strongly against the plaintiff as to leave no room for reasonable minds to differ as to the result." *Id.*

■■■ To make a submissible case, the plaintiff must present substantial evidence establishing each and every element of his claim. *Spring v. Kansas City Area Transp. Auth.,* 873 S.W.2d 224, 225 (Mo. banc 1994); *Butts v. Express Pers. Servs.,* 73 S.W.3d 825, 836 (Mo.App.2002). Substantial evidence is competent evidence from which the trier of fact can reasonably decide the case. *Mathis v. Jones Store Co.,* 952 S.W.2d 360, 366 (Mo.App.1997). Here, the appellant does not dispute the fact that to make a submissible case against the respondent on his claim for personal injuries, there had to be evidence demonstrating that either: (1) the failure to barricade the transfer station at the landfill was a dangerous condition, waiving the sovereign immunity of the respondent, in accordance with § 537.600.1(2); or (2) the respondent's operation of the landfill was a proprietary function not covered by sovereign immunity. However, even if the appellant satisfied this submissible-case requirement, on either basis, to make a submissible case he was also required, as in any other negligence action, to present evidence from which the jury could reasonably conclude that his injuries were caused by the respondent's failure to erect a barricade around the pit into which he fell. *See Wilkes v. Mo. Highway & Transp. Comm'n,* 762 S.W.2d 27, 28 (Mo. banc

1988) (explaining that § 537.600 does not create a new cause of action, but provides for a remedy for a cause of action already existing, which could not otherwise be maintained because of sovereign immunity); *Paull v. Shop'n Save Warehouse Foods,* 890 S.W.2d 401, 403 (Mo.App.1995) (explaining that "[a]ctionable negligence requires a causal connection between defendant's conduct and the resulting injury to the plaintiff"). The respondent alleged in its motion and claims on appeal that there is no evidence in the record from which the jury could have reasonably concluded that the lack of a barricade around the transfer station caused the appellant's claimed injuries such that he failed to make a submissible case, justifying the trial court's entry of JNOV for the respondent. We agree.

■■■ To establish a causal connection between the alleged negligent act and injury, the plaintiff must show both causation in fact and proximate cause. *Quinn v. Lenau,* 996 S.W.2d 564, 569 (Mo.App. 1999); *Bond v. Cal. Comp. & Fire,* 963 S.W.2d 692, 697 (Mo.App.1998); *Paull,* 890 S.W.2d at 403. The test for causation in fact is the "but for" test. *Bond,* 963 S.W.2d at 697. The "but for" test for causation provides that the defendant's conduct is a cause of the event if the event would not have occurred "but for" that conduct. *Id.* (citations omitted). Causation in fact is an issue for the jury if sufficient evidence is presented from which the jury could reasonably find that the plaintiff's injury was a direct result of the defendant's negligence. *See* Paragraph Fourth, MAI 31.16 [1995 Revision].[3] In contrast, "the practical test of proximate cause is whether the negligence is an efficient cause which sets in motion the chain

---

**3.** In the case where there are multiple causes of a plaintiff's injury, causation in fact is established where the defendant's negligence directly caused or directly contributed to cause the plaintiff's injury. MAI 19.01 [1986 Revision].

of circumstances leading to the plaintiff's injuries or damages." *Simonian v. Gevers Heating & Air Conditioning, Inc.*, 957 S.W.2d 472, 475 (Mo.App.1997) (citations omitted). "The test is not whether a reasonably prudent person would have foreseen the particular injury, but whether, after the occurrences, the injury appears to be the reasonable and probable consequence of the act or omission of the defendant." *Id.* Proximate cause is a question of law for the trial court.

■ "Evidence of causation must be based on probative facts not on mere speculation or conjecture." *Bond*, 963 S.W.2d at 697. Our review of the record indicates that there is nothing from which the jury could have reasonably inferred that the failure of the respondent to barricade the landfill transfer station caused the appellant to fall out of his employer's truck and into the dumpsters below. In other words, there is no evidence in the record, direct or circumstantial, from which the jury could have reasonably concluded that the appellant's injuries were the direct result of the respondent's failure to have a barricade or that the absence of a barricade caused his injuries. There is no evidence in the record as to the type of barricade that would have been necessary to prevent the appellant's falling into the transfer station dumpsters, after falling out of the truck he was unloading, and would still have allowed the transfer station to be used for its intended purposes. *See Ferguson v. Ginn*, 652 S.W.2d 295, 303 (Mo. App.1983).

The only testimony concerning whether a barricade would be sufficient to prevent the appellant's injuries came from the appellant and Blacketer. Blacketer testified that, at the time of the appellant's accident, the respondent was planning to construct a handrail to "minimize the chance of somebody standing on the ground falling into the dumpster," and to give users of the transfer station "something to back up to to judge how far the back of their vehicle is." The appellant testified that it would be "pure speculation" to suggest that a barricade might have prevented his fall from inside the truck into the dumpsters, including the handrail that was constructed after the accident. He also testified that he had "no idea" what kind of barricade might have prevented his injuries, and acknowledged that, to build a barricade tall enough to prevent him from falling from the back of his truck would have made it very difficult for those people who were unloading their trucks from ground level to throw their trash over the barricade.

Given the record, for the jury to have concluded that "but for" the failure of the respondent to build a barricade around the transfer station, the appellant would not have been injured, would have required it to speculate as to what possible barricades could have been erected that would have prevented the injuries, while still allowing the transfer station to be used for its intended purposes. Hence, the appellant failed to make a submissible case on the issue of causation in fact such that the trial court was justified in sustaining the respondent's motion for JNOV on that basis, a basis alleged in the respondent's motion for JNOV. *Faust*, 954 S.W.2d at 388.

### Conclusion

The JNOV of the Circuit Court of Buchanan County for the respondent on the appellant's claim for damages is affirmed.

HOLLIGER and HARDWICK, JJ., concur.