Patrick Scott DRUMMOND, Appellant,

v.

LAND LEARNING FOUNDATION, Evans & Evans Outdoor, LLC, Evans & Evans Farms, LLC, and Evans Equipment Company, Inc., Respondents.

No. WD 73613.

Missouri Court of Appeals,
Western District.

Dec. 13, 2011.

Application for Transfer to Supreme Court Denied Jan. 31, 2012.

Application for Transfer Denied
March 6, 2012.

Gene P. Graham, Jr., and Deborah J. Blakely, Independence, MO, Timothy W. Monsees, Kansas City, MO, for Appellant.

Michael J. Gorman and Mikki L. Copeland, Kansas City, MO, for Respondents Land Learning Foundation, Evans & Evans Outdoor, LLC, and Evans & Evans Farms, LLC.

Kevin D. Case and Patric S. Linden, Kansas City, MO, for Respondent Evans Equipment Company, Inc.

Before Division Two: MARK D. PFEIFFER, Presiding Judge, VICTOR C. HOWARD, Judge and JAMES EDWARD WELSH, Judge.

VICTOR C. HOWARD, Judge.

Patrick Drummond appeals the summary judgment entered by the trial court in favor of the Land Learning Foundation, Evans & Evans Outdoor, LLC, Evans & Evans Farms, LLC, and Evans Equipment Company, Inc. (collectively "Defendants") on his claim for wrongful discharge under a whistleblower theory. The judgment is affirmed.

## Factual and Procedural Background

The facts are uncontroverted. Two brothers, Brad and Bryce Evans, own Defendants. Defendants hired Mr. Drummond to serve as president of and to operate the Land Learning Foundation, a nonprofit entity. Among Mr. Drummond's duties was to market property to hunters who would pay for guided hunts. Mr. Drummond was directed and managed in his duties by the Evans brothers.

During the course of his employment, Mr. Drummond suspected that the Evans brothers were using the Land Learning Foundation to engage in tax fraud. He was concerned that its receipt of $175,000 in public monies for a conservation easement was illegal or fraudulent and confronted the Evans brothers about the possible tax fraud on several occasions. On December 6, 2005, Mr. Drummond met with the Evans brothers to discuss ongoing projects. During the meeting, Mr. Drummond again confronted them about whether they were using the Land Learning Foundation to engage in tax fraud. The Evans brothers immediately terminated Mr. Drummond's employment.

Following his termination, Mr. Drummond contacted the IRS and the Army Corps of Engineers and reported the suspected wrongdoing. He also filed the instant action against Defendants for wrongful termination in violation of public policy. Defendants subsequently filed a motion for summary judgment. The trial court granted Defendants' motion finding that neither Mr. Drummond's report of wrongdoing to the suspected wrongdoers nor his report to government officials after his termination constituted whistleblowing within the public policy exception to the employment at-will doctrine. This appeal by Mr. Drummond followed.

## Standard of Review

Appellate review of the grant of summary judgment is de novo. ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc

1993). Summary judgment will be upheld on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* at 377. The record is reviewed in the light most favorable to the party against whom judgment was entered, according that party all reasonable inferences that may be drawn from the record. *Id.* at 376. Facts contained in affidavits or otherwise in support of a party's motion are accepted as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.*

A defending party may establish a right to judgment as a matter of law by showing any one of the following: (1) facts that negate any one of the elements of the claimant's cause of action, (2) the non-movant, after an adequate period of discovery, has not and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements, or (3) there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense. *Id.* at 381.

Once the movant has established a right to judgment as a matter of law, the non-movant must demonstrate that one or more of the material facts asserted by the movant as not in dispute is, in fact, genuinely disputed. *Id.* The non-moving party may not rely on mere allegations and denials of the pleadings, but must use affidavits, depositions, answers to interrogatories, or admissions on file to demonstrate the existence of a genuine issue for trial. *Id.*

### Discussion

In his sole point on appeal, Mr. Drummond claims that the trial court erred in granting summary judgment in favor of Defendants. He claims that he appropriately "blew the whistle" by reporting the suspected wrongdoing to the Evans brothers.

"The at-will employment doctrine is well-established Missouri law." *Margiotta v. Christian Hosp. Ne. Nw.,* 315 S.W.3d 342, 345 (Mo. banc 2010). "Absent an employment contract with a definite statement of duration … an employment at will is created." *Id.* (internal quotes and citation omitted). Generally, at-will employees may be discharged for any reason or for no reason, and they have no cause of action for wrongful termination as a matter of law. *Id.; Fleshner v. Pepose Vision Inst., P.C.,* 304 S.W.3d 81, 91 (Mo. banc 2010).

The at-will employment doctrine is, however, limited. *Margiotta,* 315 S.W.3d at 346. An at-will employee may not be terminated for being a member of a protected class, such as " 'race, color, religion, national origin, sex, ancestry, age or disability.' " *Id.* (quoting § 213.055, RSMo Cum.Supp.2005). Additionally, Missouri recognizes the narrow public policy exception to the at-will employment doctrine. *Id.* The public policy exception provides that "[a]n at-will employee may not be terminated (1) for refusing to violate the law or any well-established and clear mandate of public policy as expressed in the constitution, statutes, regulations promulgated pursuant to statute, or rules created by a governmental body or (2) for reporting wrongdoing or violations of law to superiors or public authorities." *Fleshner,* 304 S.W.3d at 92. If an employer terminates an employee for either reason, the employee has a cause of action against the employer for wrongful discharge. *Id.*

Mr. Drummond alleged that his actions fell within the second public policy exception, commonly referred to as the whistleblowing exception. Public policy

encourages employees to report suspected wrongdoing to the proper authorities in order to expose the wrongdoing, to prevent further wrongdoing, and to aid in the investigation and prosecution of the wrongdoers. *Faust v. Ryder Commercial Leasing & Servs.*, 954 S.W.2d 383, 390–91 (Mo.App. W.D.1997), *abrogated on other grounds by Fleshner v. Pepose Vision Inst., Inc.*, 304 S.W.3d 81 (Mo. banc 2010). *See also Scott v. Mo. Valley Physicians, P.C.*, 460 F.3d 968, 970 (8th Cir.2006). "[I]f an employee did, in fact, carry out this public policy mandate by reporting suspected criminal activity to the proper authorities, the employee whistleblower should not be subjected to the loss of his or her job." *Faust*, 954 S.W.2d at 391. "This is the bedrock on which the public policy exception was created." *Id.*

 "[T]o effectuate the clear mandate of public policy implicated in a given situation, it is axiomatic that the at-will employee report or 'blow the whistle' to the proper authorities, which, depending on the circumstances, would include the employer, 'internal whistleblowing,' and/or a third-party authority, 'external whistleblowing.' " *Id.* Internal reporting to superiors of illegal actions by other employees can constitute protected activity. *Fleshner*, 304 S.W.3d at 97 n. 13 ("[A]n employee who is fired for informing his superiors of wrongdoing by *other* employees is entitled to bring suit.") (emphasis added). *See also Bazzi v. Tyco Healthcare Group, LP*, 2010 WL 1260141 at *7 (E.D.Mo.2010). However, a report of wrongdoing to the wrongdoer is insufficient to invoke the whistleblowing public policy exception. *Fleshner*, 304 S.W.3d at 97 n. 13; *Brenneke v. Dep't of Mo., Veterans of Foreign Wars of U.S. of Am.*, 984 S.W.2d 134, 139 (Mo.App. W.D.1998); *Faust*, 954 S.W.2d at 391. *See also Scott*, 460 F.3d at 970; *Bazzi*, 2010 WL 1260141 at *7; *Bartis v. John Bom-*

*marito Oldsmobile–Cadillac, Inc.*, 626 F.Supp.2d 994, 1001 (E.D.Mo.2009). Reporting to the wrongdoer does not expose the wrongdoer or his wrongdoing and, thus, does not further the accepted clear mandate of public policy. *Faust*, 954 S.W.2d at 391. *See also Huffman v. Office of Pers. Mgmt.*, 263 F.3d 1341, 1350 (Fed. Cir.2001) (Whistleblower Protection Act encourages reports of wrongdoing that are likely to remedy the wrong); *Bartis*, 626 F.Supp.2d at 1001. If wrongdoing occurred, the wrongdoer necessarily knew of the misconduct already because he is the one that engaged in the misconduct and is not the person likely to remedy the wrong. *Huffman*, 263 F.3d at 1350. While a report of wrongdoing to the wrongdoer may in some instances have the intended effect of stopping future criminal activity, it does not expose wrongdoers and their past wrongdoings in such a way as to remedy a public ill. *Faust*, 954 S.W.2d at 391. *See also Bartis*, 626 F.Supp.2d at 1001. Instead, "[i]t allows wrongdoers to escape detection and avoid prosecution for past wrongdoing, while in no way affording the victims an opportunity to protect themselves from further wrongdoing." *Faust*, 954 S.W.2d at 391. Such is contrary to the clear mandate of public policy. *Id.*

 It is uncontroverted that Mr. Drummond reported his suspicions of tax fraud by the Evans brothers to the Evans brothers. Such report of wrongdoing to the wrongdoers did not constitute whistleblowing. It did not expose the Evans brothers or their alleged wrongdoing in such a way as to remedy the wrong. Mr. Drummond argues that he had no other superiors or supervisors to report to other than the alleged wrongdoers and to preclude his cause of action in this situation will discourage other similarly situated employees from bringing forward illegal actions and leave them without recourse

when terminated. He asserts that no other managers, no "800" number, and no human resources department were available to him. While we are sympathetic to Mr. Drummond's argument that those employed in small companies have fewer options for internal reporting, we are bound by precedent, which provided another available avenue to him for reporting his concerns—to a third party public authority.[1] As stated above, the proper authority to whom to blow the whistle includes, depending on the circumstances, the employer and/or a third-party authority. *Fleshner*, 304 S.W.3d at 92; *Faust*, 954 S.W.2d at 391. Under the circumstances in which Mr. Drummond found himself, an outside third party authority would have been the proper authority to whom to report his suspicions. Indeed, Mr. Drummond ultimately contacted the IRS and the Corps of Engineers, but his reports did not occur until after his employment was terminated.[2] By complaining of wrongdoing only to the wrongdoers prior to his termination, Mr. Drummond did not engage in whistleblowing within the public policy exception to the employment at-will doctrine, and the trial court did not err in entering summary judgment in favor of Defendants.

The judgment is affirmed.

All concur.

---

**1.** *See Fowler v. Criticare Home Health Servs., Inc.*, 27 Kan.App.2d 869, 10 P.3d 8, 15 (2000) ("There was nothing about the fact that Fowler worked for a smaller company that prevented him from reporting to law enforcement, if he felt company reporting avenues were closed to him."). *See also Goenner v. Farmland Indus. Inc.*, 175 F.Supp.2d 1271, 1280 (D.Kan.2001) ("To qualify as whistleblowing under *Fowler*, plaintiff had to seek out the intervention of a higher authority in the company, or, if there was no higher authority than [the wrongdoer] to report to, plaintiff had to seek out the intervention of law enforcement officials.").

**2.** Mr. Drummond does not contend that these post-termination reports qualified him as a whistleblower.