Joshua Blaine HEDRICK, Appellant,

v.

JAY WOLFE IMPORTS I, LLC, d/b/a
Jay Wolfe Honda, Respondent.

No. WD 76013.

Missouri Court of Appeals,
Western District.

July 30, 2013.

Jordan R. Bergus and Ryan M. Paulus, Kansas City, MO, for appellant.

Christopher M. Sanders, Clayton, MO, for respondent.

Before Special Division: JOSEPH M. ELLIS, Presiding Judge, GARY D. WITT, Judge and ROBERT CLAYTON III, Special Judge.

GARY D. WITT, Judge.

Joshua Blaine Hedrick ("Hedrick") was an internet sales manager when he was terminated by his employer, Jay Wolfe Imports I, L.L.C. d/b/a Jay Wolfe Honda ("Wolfe"), after a member of his household purchased a Honda vehicle from a competitor. Wolfe's policy was that employees and members of their households were prohibited from buying a new Honda vehicle from another Honda dealer without giving Wolfe a chance to match the competitor's price. Hedrick brought suit for wrongful termination under the public policy exception to Missouri's at-will employment doctrine. Hedrick also included a second count alleging violations of antitrust law. Wolfe filed a motion to dismiss Hedrick's claim which was granted by the Circuit Court of Jackson County. Hedrick timely appeals. For reasons explained more fully below, we affirm.

## Factual and Procedural Background[1]

■ Hedrick began working for Wolfe in October, 2010. On May 26, 2012, Hedrick approached the General Sales Manager, Jason Brink ("Brink"), about his live-in girlfriend's desire to purchase a Honda. Brink quoted Hedrick a price that was about $600 above that car's normal price point. Hedrick asked why the price was higher and Brink replied that "it is what it is; you have to pay it." Following this, Hedrick and his girlfriend shopped around and received a quote from another Honda dealer that was $1,000 below the price that Hedrick received from Brink. Hedrick's girlfriend then purchased the car from the competing Honda dealer. On June 1, 2012, Brink asked Hedrick whether his girlfriend had purchased the Honda else-

where and Hedrick confirmed that she did. Later that night, Brink informed Hedrick that he was terminated, stating "[a]s your employer, I can't have somebody work for me who bought a car somewhere else, so I have to let you go."

Following his termination, Hedrick submitted a written request for a service letter. Wolfe subsequently issued Hedrick a letter that stated in part:

> We do, however, fully expect our employees and members of their household to purchase new Honda vehicles from our dealership ... Based on the fact that you or the person with whom you live as husband and wife ... purchased a new Honda Accord SE from a direct competitor on or about mid-late May without giving the Company the opportunity to meet the price quoted, we made the decision to terminate the employment relationship ...

On July 17, 2012, Hedrick filed a petition for damages in the Circuit Court of Jackson County, Missouri. In his two-count petition, Hedrick alleged that he was wrongfully terminated in violation of the Missouri public policy exception to the at-will employment doctrine and that his employer violated Missouri antitrust law by engaging in a restraint of trade. On September 28, 2012, Wolfe filed a motion to dismiss. On January 2, 2013, the trial court granted Wolfe's motion dismissing Hedrick's petition. Hedrick timely appealed.

## Standard of Review

■ "We review *de novo* the grant of a motion to dismiss, examining the pleadings to determine whether they invoke

---

1. In reviewing the grant of a motion to dismiss, "[t]he facts contained in the petition are treated as true and they are construed liberally in favor of the plaintiffs." *In re T.Q.L.*, 386 S.W.3d 135, 139 (Mo. banc 2012). "The court makes no effort to weigh the credibility and persuasiveness of the facts alleged." *Id.*

principles of substantive law." *Phelps v. City of Kansas City*, 371 S.W.3d 909, 912 (Mo.App. W.D.2012) (internal citations omitted). "The pleadings are liberally construed and all alleged facts are accepted as true and construed in a light most favorable to the pleader." *Id.* (internal quotation marks omitted). "In making our determination, we may not address the merits of the case or consider evidence outside the pleadings." *Id.* (internal quotation marks omitted). "If the petition sets forth any set of facts that, if proven, would entitle the plaintiffs to relief, then the petition states a claim." *Id.*

Hedrick argues two points on appeal. In his first point relied on, Hedrick contends that with regard to Count 1 of his petition, the trial court erred in granting Wolfe's motion to dismiss because "Missouri has a clear mandate of public policy encouraging its citizens to freely conduct business evidenced by its statutes, case law, and actions of government officials and appellant was terminated for exercising this right." In his second point relied on, Hedrick contends that with regard to Count 2, the trial court erred in dismissing his petition because Hedrick "has properly stated a claim for violation of the Missouri Antitrust Statute as [he] has plead a conspiracy; a relevant product and geographic market, and the remaining elements are uncontested." [2]

### Analysis on Point I

■ In Point One, Hedrick contends that the trial court erred in dismissing his petition because his claim of wrongful termination falls within a narrow public policy exception to Missouri's at-will employment doctrine such that he sufficiently pled a valid cause of action. Missouri's at-will employment doctrine states that an employer may terminate an at-will employee "for cause or without cause." *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 663 (Mo. banc 1988). As a matter of law, the discharged at-will employee has no cause of action for wrongful discharge. *Id.* "However, the at-will doctrine is limited in certain respects." *Margiotta v. Christian Hosp. Ne. Nw.*, 315 S.W.3d 342, 346 (Mo. banc 2010). "An employer cannot terminate an at-will employee for being a member of a protected class, such as 'race, color, religion, national origin, sex, ancestry, age or disability.'" *Id.* (citing § 213.055). "In addition, Missouri recognizes the public-policy exception to the at-will-employment rule." *Margiotta*, 315 S.W.3d at 346 (citing *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 92 (Mo. banc 2010); *Adolphsen v. Hallmark Cards, Inc.*, 907 S.W.2d 333, 336 (Mo.App. W.D. 1995)).

■ Hedrick argues that his petition states a claim because the reason for his termination falls within the narrow public policy exception to the at-will employment doctrine, as defined by our Supreme Court in *Fleshner v. Pepose Vision Institute, P.C.* and its progeny. 304 S.W.3d 81. "That exception establishes a cause of action for at-will employees who have been discharged in violation of a clear mandate or public policy reflected 'in the letter and purpose of a constitutional, statutory, or regulatory provision or scheme, in the judicial decisions of state and federal courts, in the constant practice of government officials, and, in certain instances, in professional codes of ethics.'" *Delaney v. Signa-*

---

2. In both points, Hedrick has failed to follow the required format for a Point Relied On under Rule 84.04(d)(1)(C). Failure to follow Rule 84.04 is cause for dismissal. However, we will review this appeal *ex gratia* as the issues are sufficiently defined and easily resolved.

*ture Health Care Found.,* 376 S.W.3d 55, 56 (Mo.App. E.D.2012).

Hedrick contends that Missouri has a clear public policy of allowing citizens to freely conduct business and that by patronizing his employer's competitor for a better price in purchasing a Honda, he and his live-in girlfriend acted in accordance with a public policy that Missouri encourages. He asserts that his termination falls under the public policy exception because he was terminated for acting in accordance with public policy. We disagree.

In *Fleshner,* our Supreme Court for the first time recognized a public policy exception to the at-will employment doctrine. In its opinion, the court recognized that the "at-will-employment doctrine is not static." *Fleshner,* 304 S.W.3d at 92. "It may be modified directly by or through public policy reflected in the constitution, a statute, a regulation promulgated pursuant to statute, or a rule created by a governmental body." *Id.* (citation omitted). Since then, "Missouri courts have recognized four categories of the public policy exception to the at-will-employment doctrine." *Delaney,* 376 S.W.3d at 57.

> Specifically, an employee has a cause of action when he or she has been discharged for: (1) refusing to perform an illegal act or an act contrary to a strong mandate of public policy; (2) reporting the employer or fellow employees to superiors or third parties for their violations of law or public policy; (3) acting in a manner public policy would encourage; or (4) filing a claim for workers' compensation.

*Id.* (citation omitted).

■ "To find otherwise would allow employers to discharge employees, without

consequence, for doing that which is beneficial to society." *Id.* at 56. With all public policy exceptions, our Supreme Court made it clear that the public policy must be *reflected by* a constitutional provision, statute, regulation promulgated pursuant to statute, or a rule created by a governmental body. *Fleshner,* 304 S.W.3d at 96 (citation omitted). However, "[a] vague or general statute, regulation, or rule cannot be successfully pled under the at-will wrongful termination theory, because it would force the court to decide on its own what public policy requires." *Margiotta,* 315 S.W.3d at 346.

Here, Hedrick's claim of wrongful termination falls within the third category of the public policy exception. Hedrick's petition alleges that he was terminated for following what he asserts to be Missouri's public policy of encouraging its citizens to freely conduct business. In support of this position, Hedrick creates a patchwork of various statutes in an attempt to identify this "public policy" in a statute, governmental rule, or written policy. Accordingly, Hedrick first argues that the Merchandising Practices Act ("MPA"), found in chapter 407,[3] supports his position because forcing a buyer into a purchase is an "unfair practice." Hedrick next argues that having only limited situations where restrictive covenants are allowed in employment law reflects that Missouri "affirmatively supports employees being able to freely conduct their individual business, in all but very few scenarios ..." Last, Hedrick cites to section 416.031.2, a portion of Missouri antitrust law, which states that it is "unlawful to monopolize, attempt to monopolize, or conspire to monopolize trade or commerce in this state." Hedrick further points out that it is unlawful for any-

---

**3.** All statutory references are to RSMo 2000, through the most current cumulative supplement, unless otherwise indicated.

one in the state to "fix a price charged." Hedrick contends that this is further evidence that Missouri "has a clear public policy of allowing consumers choice in where and with whom they do business." Hedrick concludes that "the combination of these laws form a statutory scheme that evidences a clear public policy to encourage citizens to freely conduct business and, alternatively, to discourage those that would inhibit a citizen's right to freely conduct business."

Hedrick only alleges that he was fired because his live-in girlfriend purchased a Honda automobile from a competitor. He does not allege that he offered to allow Wolfe to meet or beat the purchase price for the vehicle or that he was unaware, prior to his termination, of the Wolfe policy of requiring an employee to give Wolfe the opportunity to meet a competitor's price.[4]

■ We recognize that Hedrick is attempting to establish, though not specifically set forth, that the policy of the State in this area is implicit based on the provisions of other statutes. That, however, is not what the law requires. Hedrick's petition needs to identify a "clear mandate of public policy" in the law in order for his petition to state a claim upon which relief may be granted. "[P]ublic policy must be found in a constitutional provision, a statute, regulation promulgated pursuant to statute, or a rule created by a governmental body." *Fleshner*, 304 S.W.3d at 96 (citing *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661, 663 (Mo. banc 1988)). Until the legislature or other governmental body enacts a clear statement of public policy in a statute, regulation or a code of professional ethics, there is not a "clear mandate of public policy" in existence that Hedrick can be said to have been following which resulted in his termination. A vague or general statute is insufficient and absent explicit authority, the cause of action must fail as a matter of law. *Margiotta*, 315 S.W.3d at 346.

None of the statutory pieces, cited by Hedrick, individually support Hedrick's position on its own. The MPA does not apply because Wolfe was not involved in the sale of the Honda that Hedrick's live-in girlfriend purchased. The MPA only applies to practices made in connection with the sale of merchandise or services, in which case the proper inquiry would be directed towards the competitor from whom Hedrick's girlfriend purchased the vehicle. § 407.020.1. But that sale is not at issue. There was also no restrictive covenant involved here, as Hedrick freely admits, so the fact that employment law discourages restrictive covenants is not applicable.[5] Finally, there were no facts alleged which would support a conspiracy between Wolfe and any other entity including the competitor from whom Hedrick's girlfriend purchased a Honda.

■ None of the statutory authority cited by Hedrick represents a clear mandate of public policy that clearly encourages the act of buying a vehicle at the best price one could find, regardless of the consequences that decision brings. Hedrick can point to no "clear statement of a public policy" for which he was terminated for following. "Public policy is not to be de-

---

4. At oral argument Hedrick's counsel stated that Hedrick first became aware of the policy when he received his service letter following his termination.

5. Notably, neither party produced a written policy concerning the prohibition against pa-

tronizing a competitor; however, even if one were to have been produced, our analysis does not change because being terminated for refusing to sign a restrictive covenant (the use of which is against public policy) is not at issue.

termined by 'the varying personal opinions and whims of judges or courts ... as to what they themselves believe to be the demands or interests of the public.'" *Fleshner*, 304 S.W.3d at 96 (citing *In re Rahn's Estate*, 316 Mo. 492, 291 S.W. 120, 123 (1926)). As to Hedrick's patchwork argument, we decline and are indeed prohibited from taking laws out of their statutory context and piecing them together to create a new law or "a clear mandate of public policy" involving employee/employer relations where one does not clearly exist. "In determining the intent and meaning of statutory language, the words must be considered in context ..." *State ex rel. Evans v. Brown Builders Elec. Co., Inc.*, 254 S.W.3d 31, 35 (Mo. banc 2008) (citation and internal quotation marks omitted).

For all of the above reasons, Point One is denied.

## Analysis on Point II

■ In Point Two, Hedrick argues that his employer violated antitrust law, making the trial court's dismissal of his petition erroneous. Specifically, Hedrick argues that Wolfe and "multiple people agreed to enter into [a] conspiracy" and that he was a victim of that conspiracy. The multiple people are alleged to be the other Jay Wolfe dealerships that sell different makes of cars. Hedrick argues that the group of targeted consumers consists of the Wolfe employees who, should they choose to buy a new Honda while employed by Wolfe, are required to give Wolfe an opportunity to match its competitor's price and buy their new Honda vehicles from their employer, or else be terminated.

■ To sufficiently state an antitrust claim, a plaintiff must allege (1) a contract, combination or conspiracy; (2) that the combination or conspiracy produced adverse, anticompetitive effects within the relevant product and geographic markets; (3) the objects of and conduct pursuant to the combination or conspiracy were illegal; and (4) plaintiff was injured as a proximate result of the conspiracy. *Johnston v. Norrell Health Care, Inc.*, 835 S.W.2d 565, 568 (Mo.App. E.D.1992) (citations omitted).

■ Hedrick's claim must fail as a matter of law. First, he does not identify a coconspirator. "Unilateral conduct does not provide a basis of liability; concerted action must be alleged ..." *Metts v. Clark Oil & Ref. Corp.*, 618 S.W.2d 698, 701 (Mo.App. E.D.1981) (citation omitted). "Further, a business and its employees cannot be a combination; otherwise, the plurality requirement would lose all meaning." *Id.* (internal quotation marks omitted). Here, Hedrick fails to identify any other dealerships, entities, or organizations with whom Wolfe had an agreement to restrain trade. To the extent Hedrick contends that the other Jay Wolfe dealerships were involved in a conspiracy against their employees, those dealerships do not sell Hondas so they are not in the same market. Thus, what other Jay Wolfe dealers do has no impact on the Honda market. Further, as the trial court noted, Hedrick does not demonstrate how Wolfe's actions have done anything to affect the relevant market for Honda vehicles. Even if Wolfe *required* all of its employees to purchase new Hondas from Wolfe, it would be highly unlikely that the market and price point for a new Honda would change at all. The internal employee purchase policy of Wolfe has little bearing on its ability to corner the market for Hondas. Hedrick provides no allegations that an anticompetitive effect has swept over the market for Hondas.

Pursuant to *Johnston*, all four elements must be alleged to sufficiently state a violation of antitrust law. *Johnston*, 835 S.W.2d at 568. Because Hedrick did not

identify a co-conspirator outside of his employer, his claim must fail. Accordingly, Point Two is denied.

### Conclusion

Because Hedrick can point to no clear public policy found in a statute, regulation or governmental rule, his termination does not fall into a public policy exception to the at-will employment doctrine. Without falling under an exception to the at-will employment doctrine, Wolfe cannot be held liable for wrongful termination. Thus, the trial court's dismissal of Count I of his petition was not erroneous.

Regarding Hedrick's claim that Wolfe violated Missouri antitrust law, Hedrick did not allege a co-conspirator nor allege evidence of the effect on the Honda market based on Wolfe's internal employee policies. The trial court did not err when it dismissed Count II of Hedrick's petition.

For all of these reasons, the trial court's dismissal of Hedrick's petition for failure to state a claim was not erroneous. The judgment of the trial court is affirmed.

All concur.