In the Missouri Court of Appeals
 Eastern District
 DIVISION ONE

JIMMY YOUNT, ) No. ED109503
 )
 Appellant, ) Appeal from the Circuit Court
 ) of Perry County
vs. )
 ) Honorable Benjamin F. Lewis
KELLER MOTORS, INC., )
 )
 Respondent. ) FILED: December 14, 2021

 Introduction

 Jimmy Yount (“Yount”) appeals from the circuit court’s judgment dismissing his petition

(“Petition”) brought against his former employer, Keller Motors, Inc. (“Keller”), under Section

285.575,1 also known as the Whistleblower’s Protection Act (“WPA”). In his sole point on

appeal, Yount argues the circuit court misinterpreted the WPA to find that his allegation of co-

employee misconduct did not plead an unlawful act or serious misconduct of the employer to

qualify him as a protected person under the WPA. The WPA protects employees who report to

the proper authorities an unlawful act of his or her employer or who report serious misconduct of

the employer that violates a clear mandate of public policy as articulated in a constitutional

provision, statute, or regulation promulgated by statute. Section 285.575.2(4). Yount avers in

his Petition that he was wrongfully discharged after reporting to his supervisors that certain of

1
 All Section references are to RSMo (Cum. Supp. 2018), unless otherwise noted.
his coworkers were stealing from Keller. Because the WPA by its express language codified the

existing public-policy exception for whistleblower protection under the WPA, which has long

recognized individual employee misconduct as a source of employer misconduct, the Petition

adequately pleads that Yount is a protected person under the WPA. For that reason, we find the

circuit court erred in dismissing Yount’s Petition for failure to state a claim under the WPA. We

reverse the circuit court’s judgment and remand to the circuit court to continue proceedings

consistent with this opinion.

 Factual and Procedural History

 For purposes of this appeal, we take the following facts as pleaded in the Petition as true.

Keller employed Yount as a mechanic in its automotive repair shop for approximately four years.

Yount observed co-employees stealing company property for personal use. Specifically, Yount

observed two of his coworkers taking a rear camera from a vehicle owned by Keller. Yount saw

one of the coworkers receive a cash payment for the vehicle part without reporting the payment

to his supervisors. Yount reported his observations to his supervisors. Yount’s supervisors

berated him for reporting his co-employees’ actions. Yount refused to follow his supervisors’

instructions to ignore the theft and then reported his observations to Keller’s owners. One of the

owners indicated it was a serious matter and that he would take care of the situation. Yount felt

his main supervisor began retaliating against him for having escalated the matter.

 After reporting the internal theft, one of Yount’s supervisors wrote him up for deficient

performance relating to his work on a Chevy vehicle. Approximately one week after reporting

on his co-employees, the supervisor terminated Yount’s employment. Keller’s stated reason for

termination was Yount’s poor workmanship on the Chevy vehicle and overall unsatisfactory

work performance.

 2
 Yount filed a Petition in the circuit court against Keller stating a whistleblower claim

under the WPA as follows:

 37. Plaintiff incorporates by reference all previous paragraphs.
 38. Plaintiff is an employee under [Section] 285.575.
 39. Defendant is an employer under [Section] 285.575.
 40. Plaintiff is a protected person under [Section] 285.575.
 41. Defendant illegally discharged Plaintiff after he reported coworkers
 stealing company property for personal use and his refusal to remain silent
 when witnessing such theft.
 42. Stealing property is a violation of public policy as articulated in Missouri
 law, and ignoring such stealing would also be a violation of the law.
 43. Plaintiff’s reports and refusal to cover up coworkers’ thefts were the
 motivating factor in his discharge.

 Keller moved to dismiss the Petition for failure to state a claim upon which relief could

be granted. Keller maintained that Yount was not a protected person under the WPA because

Yount alleged only that he was terminated for reporting misconduct of an employee and not

employer misconduct. Keller also argued that Yount failed to demonstrate how the reported

conduct violated a constitutional provision, statute, or regulation setting forth a clear mandate of

public policy as required for protection under the WPA. After briefing and argument, the circuit

court granted the motion to dismiss the Petition.2 The circuit court found that Yount’s reporting

of his co-employees’ misconduct did not make him a “protected person” under the WPA because

Yount did not report employer misconduct. The trial court dismissed Yount’s Petition for failure

to allege facts stating a claim for relief. Yount now appeals.

 Point on Appeal

 In his sole point on appeal, Yount alleges the circuit court erred in granting Keller’s

motion to dismiss because it misconstrued Section 285.575 by improperly concluding that co-

employee misconduct could not demonstrate serious misconduct of the employer.

2
 Yount moved for leave to file an amended petition with expanded allegations. The circuit court overruled the
motion.

 3
 Standard of Review

 We review the grant of a motion to dismiss de novo without deference to the circuit

court’s ruling. Jaeger v. Res. for Human Dev., Inc., 605 S.W.3d 586, 589 (Mo. App. W.D. 2020)

(internal citation omitted); Hedrick v. Jay Wolfe Imports I, LLC, 404 S.W.3d 454, 456–57 (Mo.

App. W.D. 2013) (internal citation omitted). “We view the facts contained in the petition as true

and in the light most favorable to the plaintiff.” Jaeger, 605 S.W.3d at 589 (internal quotation

omitted). We “review[] the petition to see if the facts alleged, given their broadest intendment,

meet the elements of a cause of action that is recognized or that might be adopted.” Peters v.

Wady Indus., Inc., 489 S.W.3d 784, 789 (Mo. banc 2016) (citing State ex rel. Henley v.

Bickel, 285 S.W.3d 327, 329 (Mo. banc 2009)). “If the petition contains any facts that, if

proven, would entitle the plaintiff to relief, then the petition states a claim.” Jaeger, 605 S.W.3d

at 589 (internal quotation omitted). Additionally, statutory interpretation is a matter of law that

we review de novo. Doe v. St. Louis Cmty. Coll., 526 S.W.3d 329, 335 (Mo. App. E.D. 2017)

(internal citation omitted).

 Discussion

 As an at-will employment state, Missouri employers generally may terminate an

employee “for any reason or for no reason.” Margiotta v. Christian Hosp. Ne. Nw., 315 S.W.3d

342, 345 (Mo. banc 2010) (internal quotation omitted). The at-will employment doctrine is

nonetheless subject to certain limitations. Id. at 346 (internal citation omitted). Prior to the

enactment of the WPA, Missouri courts recognized a common-law action for wrongful discharge

under a “narrowly drawn” public-policy exception. Jones v. Galaxy 1 Mktg., Inc., 478 S.W.3d

556, 563 (Mo. App. E.D. 2015) (quoting Margiotta, 315 S.W.3d at 346); see also Fleshner v.

Pepose Vision Inst., P.C., 304 S.W.3d 81, 91–92 (Mo. banc 2010) (internal citations omitted).

To bring a wrongful-discharge action under the public-policy exception, the employee was

 4
required to allege that the employer violated a “clear mandate of public policy [that] must be

reflected ‘in the letter and purpose of a constitutional, statutory, or regulatory provision or

scheme, in the judicial decisions of state and federal courts, in the constant practice of

government officials, [or], in certain instances, in professional codes of ethics.’” Jones, 478

S.W.3d at 563 (quoting Delaney v. Signature Health Care Found., 376 S.W.3d 55, 56 (Mo. App.

E.D. 2012)); Hedrick, 404 S.W.3d at 458 (citing Fleshner, 304 S.W.3d at 96).

 The Missouri legislature codified the common-law whistleblower protections for

employees when it enacted the WPA in 2017. Importantly, the WPA provides that “[t]his

section is intended to codify the existing common[-]law exceptions to the at-will employment

doctrine and to limit their future expansion by the courts. This section, in addition to chapter 213

and chapter 287,3 shall provide the exclusive remedy for any and all claims of unlawful

employment practices.” Section 285.575.3; see also Yerra v. Mercy Clinic Springfield Cmtys.,

536 S.W.3d 348, 351 n.3 (Mo. App. S.D. 2017).

 The WPA makes it “[a]n unlawful employment practice for an employer to discharge an

individual defined as a protected person in this section because of that person’s status as a

protected person.” Section 285.575.4. Protected persons, and only protected persons, are

entitled to bring a private right of action for damages against the employer for a violation of the

WPA. Section 285.575.5. The WPA defines a “protected person” as:

 an employee of an employer who has reported to the proper authorities an
 unlawful act of his or her employer; an employee of an employer who reports to
 his or her employer serious misconduct of the employer that violates a clear
 mandate of public policy as articulated in a constitutional provision, statute, or
 regulation promulgated under statute; or an employee of an employer who has
 refused to carry out a directive issued by his or her employer that if completed
 would be a violation of the law. An employee of an employer is not a protected
 person if:

3
 Chapter 213 contains the Missouri Human Rights Act (“MHRA”), and chapter 287 contains the Workers’
Compensation Act.

 5
 (a) The employee is a supervisory, managerial, or executive employee or an officer
 of his or her employer and the unlawful act or serious misconduct reported concerns
 matters upon which the employee is employed to report or provide professional
 opinion; or

 (b) The proper authority or person to whom the employee makes his or her report
 is the person whom the employee claims to have committed the unlawful act or
 violation of a clear mandate of public policy[.]

Section 285.575.2(2) (emphasis added). The WPA defines “employer” as:

 “Employer,” an entity that has six or more employees for each working day in each
 of twenty or more calendar weeks in the current or preceding calendar year.
 “Employer” shall not include the state of Missouri or its agencies,
 instrumentalities, or political subdivisions, including but not limited to any public
 institution of higher education, a corporation wholly owned by the state of
 Missouri, an individual employed by an employer, or corporations and associations
 owned or operated by religious or sectarian organizations[.]

Section 285.575.2(2) (emphasis added).

 In the matter before us, the circuit court dismissed Yount’s Petition because Yount

alleged he was terminated for reporting co-employee theft from the employer. Explaining that

“the General Assembly drafted the WPA to protect individuals who ‘blow the whistle’ on their

employers, not individuals who report misconduct by coworkers,” the circuit court found that

Yount’s reported thefts by his coworkers did not make him a “protected person” under the WPA.

In so holding, the circuit court, while adhering to the plain meaning of the definition of

“employer” found within Section 285.575.2(2), greatly limited the common-law protections

enjoyed by employees who reported misconduct of a coworker prior to the enactment of the

WPA. Yount disputes the circuit court’s reasoning and asserts that his Petition alleging co-

employee theft adequately states a claim for reporting an “unlawful act” or “serious misconduct”

of his employer under the WPA. The challenge presented to this Court is the apparent conflict

between differing provisions found within Section 285.575. Our duty is to resolve the conflict

 6
when possible and bring harmony to the entire statute. See Doe, 526 S.W.3d at 337 (citing Gott

v. Dir. of Revenue, 5 S.W.3d 155, 159–60 (Mo. banc 1999)).

I. Protected-Person Status under the WPA

 A. Definition of Employer

 Interpreting the newly enacted WPA is a matter of first impression before our Court. Our

“primary rule of statutory interpretation is to give effect to legislative intent as reflected in the

plain language of the statute at issue.” Peters, 489 S.W.3d at 789 (quoting Howard v. City of

Kan. City, 332 S.W.3d 772, 787 (Mo. banc 2011)). “If the intent of the legislature is clear and

unambiguous, by giving the language used in the statute its plain and ordinary meaning, then

[this Court is] bound by that intent and cannot resort to any statutory construction in interpreting

the statute.” Id. (quoting Howard, 332 S.W.3d at 787) (alteration in original). However, if the

language is ambiguous or would lead to an absurd or illogical result, we will look beyond the

statute’s plain meaning. Rasmussen v. Ill. Cas. Co., 628 S.W.3d 166, 175 (Mo. App. W.D.

2021) (internal citation omitted); see State ex rel. Jackson v. Dolan, 398 S.W.3d 472, 479 (Mo.

banc 2013) (quoting Spradlin v. City of Fulton, 982 S.W.2d 255, 258 (Mo. banc 1998)) (“Courts

look elsewhere for interpretation only when the meaning is ambiguous or would lead to an

illogical result defeating the purpose of the legislature.”). “When the legislature provides a

statutory definition, [that definition] ‘supersedes the commonly accepted dictionary or judicial

definition and is binding on the courts.’” Cosby v. Treasurer of State, 579 S.W.3d 202, 207 (Mo.

banc 2019) (quoting Jackson, 398 S.W.3d at 479).

 The legislature included definitions of both “employer” and “protected person” within the

WPA. Critically, the definition of “protected person” includes the term “employer.” The

interplay of these two definitions presents some uncertainty and confusion as to the scope of

protected-person status under the WPA. Our task is to interpret these statutory definitions and

 7
harmonize their apparent conflict, if possible. See Rasmussen, 628 S.W.3d at 175 (internal

citation omitted). Applying these definitions grants “protected person” status only to those

employees who satisfy one of three following categories: (1) an employee who reports to the

proper authorities an unlawful act of the employer; (2) an employee who reports to the employer

serious misconduct of the employer that violates a clear mandate of public policy as articulated

in a constitutional provision, statute, or regulation promulgated under statute; or (3) an employee

who refuses to carry out a directive issued by the employer that would violate the law. Section

285.575.2(4).

 Here, Yount’s Petition alleges he reported co-employee theft of company property to his

supervisors and Keller’s owners, and was discharged after reporting the theft. Yount argues

these facts qualify him as a protected person for reporting an “unlawful act of his [] employer” or

“serious misconduct of the employer.” See id. Yount’s allegations potentially fall within either

the first or second category of protected persons as defined by the WPA. See id. However, for

either category, Yount only states a claim under the WPA if we hold the circuit court erroneously

applied the term “employer” to exclude the alleged misconduct of an employee’s coworkers.

 Keller correctly notes that the definition of “employer” set forth in Section 285.575.2(2)

specifically excludes “an individual employed by an employer[.]” The circuit court, applying the

plain meaning of the words used in this definition, found that an employee who reports

misconduct of individuals employed by the employer is not a “protected person” under Section

285.575.4 because the employee is not reporting misconduct of the employer. Looking at the

definition in isolation supports the circuit court’s judgment. However, our inquiry does not end

with reviewing the language of only Section 285.575.2(2). To the contrary, we are obligated to

construe the statute as a whole and not in isolated parts. See R.M.A. by Appleberry v. Blue

 8
Springs R-IV Sch. Dist., 568 S.W.3d 420, 429 (Mo. banc 2019) (internal citation omitted). We

must give the word “employer” meaning that is in harmony with all provisions of Section

285.575 and avoids an absurd result that would defeat the purpose of the legislative act. See

Jackson, 398 S.W.3d at 479 (citing Spradlin, 982 S.W.2d at 258); Rasmussen, 628 S.W.3d at

175; Doe, 526 S.W.3d at 337 (internal citation omitted) (“In construing the meaning of an

ambiguous enactment, a court should only adopt reasonable interpretations, disregarding

constructions that would lead to absurd results.”). The circuit court’s judgment does not suggest

it considered any language of the WPA other than Section 285.575.2(2). Therein lies its error.

 In pointing out the confusion in attempting to consistently apply the WPA’s definition of

“employer” within all the provisions of the WPA, Yount focuses on the practical reality that an

employer must conduct its business and activities through natural persons, and those natural

persons include its employees.4 More simply stated, any misconduct or unlawful act of the

employer necessarily would include the conduct of the employer’s employees when the

employer acts through its employees. Although no court has yet addressed this precise issue

under the WPA, Yount offers as guidance federal district court opinions that have resolved

similarly-worded statutes in other states codifying public-policy whistleblower protection by

interpreting unlawful acts of an employer to include unlawful acts of the employer’s employees.

See, e.g., Williams v. Accelerated Learning Sols., Inc., No. 2:16-CV-239-FTM-38MRM, 2016

WL 3552430, at *4 (M.D. Fla. June 30, 2016) (interpreting Florida’s whistleblower protection

4
 For example, Yount highlights how the definition of “protected person” includes “an employee of an employer
who reports to his or her employer serious misconduct of the employer[,]” raising the question of how an employee
can report misconduct if not to a person employed by the employer. See Section 285.575.2(4) (emphasis added).
Additionally, Yount cautions that the circuit court’s misinterpretation will lead to the absurd scenario in which an
employer accused of violating the WPA by wrongfully discharging an employee could claim the WPA does not
apply to the discharge because, as a practical matter, an employee of the employer effected the discharge, not the
employer. See Section 285.575.4 (specifying that “[i]t shall be an unlawful employment practice for an employer to
discharge an individual defined as a protected person in this section”) (emphasis added).

 9
law, which grants protection only to employees who object to unlawful acts of their employers,

to include unlawful acts of offending employees as imputed to the employer).

 Yount maintains that the term “employer” is used multiple times throughout the WPA

and that the definition set forth in Section 285.575.2(2) cannot be applied consistently beyond

this specific subsection. Yount submits that applying Section 287.575.2(2)’s definition of

employer every time the term “employer” is used within the WPA presents myriad challenges

and at times would lead to an absurd result unintended by the legislature. We agree that a

uniform application of the definition of employer set forth in Section 285.575.2(2) potentially

leads to either illogical or absurd results requiring statutory construction to distill the

legislature’s intended meaning. See Doe, 526 S.W.3d at 336 (internal citation omitted). This

absurdity is best illustrated by the apparent conflict between how the legislature defined the term

“employer” in Section 285.575.2(2) and the legislature’s broad retention of the common-law

exceptions to the at-will employment doctrine under Section 285.575.3. When engaging in

statutory interpretation, we are not limited to only the words used in the statute, but are guided in

our decision by the express legislative intent of the WPA. See Rasmussen, 628 S.W.3d at 175

(internal citation omitted) (noting plain-meaning irregularities should be resolved by determining

the intent of the legislature and by giving effect to its intent wherever possible); Doe, 526

S.W.3d at 337 (internal citation omitted). Yount contends that the circuit court’s interpretation

of the WPA eliminates established common-law protections afforded to employees who report

wrongdoings of coworkers. Yount strenuously posits that when enacting the WPA, the

legislature intended to codify the existing common-law whistleblower protections—not

substantially curtail such protections.

 10
 Without question, the circuit court’s strict application of the WPA’s definition of

“employer” found within Section 285.575.2(2) to the definition of “protected person” eliminates

a common-law public-policy whistleblower protection for workers previously recognized by our

courts, i.e., reporting wrongful conduct of coworkers. See Fleshner, 304 S.W.3d at 97 n.13

(internal citations omitted) (noting “[t]he public-policy exception explicitly recognizes that an

employee’s superiors can constitute the proper authority to whom to blow the whistle and that an

employee who is fired for informing his superiors of wrongdoing by other employees is entitled

to bring suit”); see also Drummond v. Land Learning Found., 358 S.W.3d 167, 171 (Mo. App.

W.D. 2011) (citing Fleshner, 304 S.W.3d at 97 n.13) (noting “[i]nternal reporting to superiors of

illegal actions by other employees can constitute protected activity”). The Western District

explained how co-employee misconduct falls within the public-policy exception as follows:

 [W]e must logically look at the clear mandate of public policy which is implicated
 in encouraging employees to come forward and report criminal activity by co-
 employees. As pled by appellant in his amended petition, in Missouri the theft of
 property from another, including one’s employer, is a violation of criminal law.
 We would not quarrel with the fact that public policy would clearly encourage
 employees to report suspected criminal activity by co-employees to the proper
 authorities in order to “expose” the wrongdoers and their wrongdoing to prevent
 further wrongdoing and to aid in the investigation and criminal prosecution of the
 wrongdoers.

Faust v. Ryder Com. Leasing & Servs., 954 S.W.2d 383, 390–91 (Mo. App. W.D. 1997)

(internal citation omitted), abrogated by Fleshner, 304 S.W.3d 81. Similarly, the Western

District has determined that “sound public policy dictates that the law should encourage the

uncovering and prosecution of crime, and that ‘[a]ny policy that discourages citizens from

reporting crime or aiding in prosecution would be undesirable and detrimental to society in

general.’” Brenneke v. Dep’t of Mo., Veterans of Foreign Wars of U.S. of Am., 984 S.W.2d

134, 138–39 (Mo. App. W.D. 1998) (quoting Faust, 954 S.W.2d at 389–90, abrogated by

 11
Fleshner, 304 S.W.3d 81). More recently, the Western District restated that “[t]he purpose of the

public[-]policy exception is to prevent employers from discharging employees, without

consequence, for doing that which is beneficial to society.” Jaeger, 605 S.W.3d at 59 (citing

Fleshner, 304 S.W.3d at 92). The circuit court’s finding that Missouri’s public-policy

whistleblower protection extends only to those employees who blow the whistle on their

“employers,” not employees who report misconduct of their coworkers, ignores the judicial

authority holding otherwise at common law. See Drummond, 358 S.W.3d at 171 (citing

Fleshner, 304 S.W.3d at 97 n.13).

 The pronounced issue before us is whether the legislature intended to displace this

common-law whistleblower protection with a more limited statutory remedy when it enacted the

WPA in 2017. Keller reasons that by expressly defining the term “employer” to exclude

employees of the employer, the legislature affirmatively eliminated the common-law protection

of an employee who merely reports an unlawful act or misconduct of coworkers. However, such

a result would substantially limit rather than codify Missouri’s existing common-law exceptions

to the at-will employment doctrine. As is plainly understood by the language of the statute in

Section 285.575.3, while the legislature may have had concern with a future expansion of

whistleblower rights, the legislature was intent on retaining the common-law protections that

existed upon the enactment of the WPA. Because the legislature is presumed to know the

common law at the time it enacts a statute, we presume the legislature knew Missouri common

law recognized whistleblower protection for reports of coworker misconduct when it enacted the

WPA and expressly retained the common-law protections. See Hopfer v. Neenah Foundry Co.,

477 S.W.3d 116, 126 (Mo. App. E.D. 2015) (internal quotation omitted) (noting “‘the legislature

is presumed to be aware of the state of the law at the time it enacts a statute,’ [and] a

 12
fundamental rule of construction is that statutes are to be construed ‘with reference to the

principles of common law in force at the time of their passage’”). Broadly applying the narrow

definition of “employer” set forth in 285.757.2(2) directly contradicts the express language of

Section 285.575.3, which states [t]his section is intended to codify the existing common[-]law

exceptions to the at-will employment doctrine[.]” Section 285.575.3 (emphasis added).

 The legislature’s choice to include this provision of legislative intent is fundamental to

our resolution of this appeal. We note that this explicit statement of legislative intent

distinguishes the WPA from the contemporaneously amended Missouri Human Rights Act

(“MHRA”), which in 2017 identically redefined “employer” to exclude “[a]n individual

employed by an employer[.]” See Wiedner v. Ferrellgas, Inc., 607 S.W.3d 231, 237, 239 (Mo.

App. W.D. 2020) (citing Section 213.010(8)). The Western District found the MHRA’s new

exclusionary definition of “employer” was a substantive amendment barring retroactive

application because it eliminated plaintiffs’ causes of actions for discriminatory acts against

individual defendants that previously were actionable under Missouri law. Id. at 239. Given

that we must interpret “employer” consistent within the provisions of the WPA as well as

cognate and other statutes in pari materia, we find it reasonable that the legislature employed the

same definition of “employer” in both employment-law statutes to effectuate the same result.

See Appleberry, 568 S.W.3d at 429 (internal citation omitted). Thus, comporting the WPA with

the similarly-worded MHRA, we can give meaning to the exclusionary language in the WPA’s

definition of “employer” by acknowledging the legislative intent to limit the parties against

whom a WPA claim may be brought as the exclusive remedy for wrongful discharge—namely,

employers, rather than the individual employees employed by the employer. See Wiedner, 697

S.W.3d at 239. Applying the definition of “employer” in this way harmonizes Section

 13
285.575.2(2) with Section 285.575.3 and eliminates any conflict or potential absurd result when

applying the narrow definition in a broader sense throughout the statute. In order to give

meaning to every provision within the WPA, we conclude that the correct reading of the WPA

distinguishes between the exclusion of individual employees of the employer as proper

defendants for wrongful-discharge actions and the fact that employers act through those same

individual employees. See Rasmussen, 628 S.W.3d at 175 (quoting Sun Aviation, Inc. v. L-3

Commc’ns Avionics Sys., Inc., 533 S.W.3d 720, 726 (Mo. banc 2017)) (“Because each word of

a statute is presumed to have been included for a particular purpose, an interpretation rendering

statutory language redundant or without meaning is disfavored.”). Such a reading best realizes

the legislative intent to preserve existing whistleblower protections for employees who report

unlawful acts or misconduct of individual employees of the employer, while avoiding the absurd

result of employers claiming immunity from the WPA because the complained of misconduct

was taken by individual employees and not “the employer.” See Doe, 526 S.W.3d at 342

(internal citation omitted).

 By this decision we do not create any new protections for employees not previously

established under common law. See Section 285.575.3 (providing that the WPA “is intended to

codify the existing common law exceptions to the at-will employment doctrine and to limit their

future expansion by the courts”) (emphasis added); Hedrick, 404 S.W.3d at 460 (noting “we

decline and are indeed prohibited from taking laws out of their statutory context and piecing

them together to create a new law or ‘a clear mandate of public policy’ involving

employee/employer relations where one does not clearly exist”). Nor do we ignore the

applicability of the limiting language in the definition in “employer” to other issues not

addressed on this appeal, such as the aforementioned proper party-defendants to an action under

 14
the WPA. See, e.g., Ward v. G4s Secure Sols. (USA), Inc., No. 4:20CV891 JCH, 2020 WL

5291938, at *2 (E.D. Mo. Sept. 4, 2020) (illustrating a limitation of the exclusionary definition

of “employer” by holding that the WPA does not cover serious misconduct of the employer

when the employee who committed the alleged misconduct was working for another employer

at the time of the misconduct). Rather, a reasonable interpretation of the definition of

“employer” under the WPA that gives meaning to all of the provisions therein, and respects the

intent of the legislature in codifying existing whistleblower protections, requires us to find that a

plaintiff who pleads that he or she reported unlawful acts or serious misconduct of co-employees

adequately pleads unlawful acts or serious misconduct of the employer for purposes of being a

protected person under the WPA. This nuanced interpretation of the defined terms “employer”

and “protected person” gives meaning to all provisions within the WPA and avoids contravening

the express legislative intent of the statute to codify existing common-law exceptions to the at-

will employment doctrine. See Appleberry, 568 S.W.3d at 429 (internal citation omitted);

Rasmussen, 628 S.W.3d at 175; Doe, 526 S.W.3d at 337 (citing Gott, 5 S.W.3d at 159–60).

 We recognize that some of the jurisprudence establishing whistleblower protection for

reporting co-employee misconduct, such as Faust and Brenneke, preceded Margiotta in which

the Supreme Court held that a petition for wrongful discharge based upon the employer’s

violation of public policy must identify authority from either a constitutional provision, statute,

or regulation advancing a clear mandate of public policy. Margiotta, 315 S.W.3d at 346; see

Section 585.575.2(4) (defining “protected person” in part as “an employee of an employer who

reports to his or her employer serious misconduct of the employer that violates a clear mandate

of public policy as articulated in a constitutional provision, statute, or regulation promulgated

under statute”). Keller suggests that whistleblower protection extends to Yount only if he

 15
alleged serious misconduct violating a clear mandate of public policy as articulated in a

constitutional provision, statute, or regulation. Nevertheless, Margiotta is not dispositive here

because Yount’s claim concerns the criminal act of stealing, and therefore reasonably alleges an

“unlawful act” under the first category of protected persons under the WPA, and not the public-

policy category. See Section 585.575(4). Contrastingly, in Margiotta the two regulations

regarding patient care and safety were deemed to be too vague or too general to support the

plaintiff’s claim for wrongful discharge under the public-policy exception. Margiotta, 315

S.W.3d at 348. Similarly, a Western District decision affirmed dismissal of a wrongful-

discharge petition under the public-policy exception for failure to plead how a law with a clear

mandate of public policy was violated where the employee, who alleged wrongful termination

after his girlfriend purchased a competitor’s car, referenced various sections of the Missouri

Merchandising Practices Act (“MMPA”) and other restrictive-covenant and antitrust laws

purportedly relating to Missouri’s public policy of encouraging its citizens to freely conduct

business. See Hedrick, 404 S.W.3d at 458.

 This court recently held that an employee failed to withstand summary judgment under

the public-policy exception where the employee of a satellite service provider alleged wrongful

discharge after he refused to establish temporary connectivity with consumers because he

believed the practice was deception, fraud, theft, and embezzlement.5 Jones, 478 S.W.3d 556 at

561, 567–68. We found the act of establishing temporary connectivity with customers as

evidenced in the summary-judgment record did not amount to a violation of a clear mandate of

5
 More specifically, the Galaxy employee alleged various public-policy violations arising out of a practice in which
Dish Network paid Galaxy an incentive bonus when Galaxy technicians established connectivity at a residence,
which could be achieved despite the consumer not having internet connectivity by creating a temporary connection
through the technician’s cellphone. The connection was sufficient in duration to generate a good code from Dish
Network to merit the bonus, however the connectivity would then be lost because the consumer’s home lacked a
permanent internet connection. See Jones, 478 S.W.3d at 561.

 16
public policy under Missouri’s general stealing statute. See id. at 567–68 (also finding

inapplicable the Deceptive Business Practice Act, the MMPA, and the Uniform Commercial

Code).

 Jones is distinguishable from the matter before us. First, Jones was decided on a

summary-judgment record, rather than mere pleadings. Next, and more importantly, Jones

preceded the enactment of the WPA, which distinguishes our analysis today because the WPA

designates three categories of employees who enjoy “protected person” status, including: (1)

employees who “report[] to the proper authorities an unlawful act of [their] employer” and (2)

employees who report “serious misconduct . . . that violates a clear mandate of public policy[.]”

Section 285.575.2(4). This codified categorization persuades us that Jones is not dispositive of

this appeal. In particular, Yount’s Petition alleges his co-employees committed theft of company

property and pleads that “[s]tealing property is a violation of public policy as articulated in

Missouri law, and ignoring such stealing would also be a violation of the law.” Unlike in Jones,

the facts before us do not impose a duty to decide what public policy requires under the relevant

statute, because the Petition alleges theft of physical property, specifically vehicle parts. See

Jones, 478 S.W.3d 556 at 567–68. Certainly, stealing is an unlawful act found within Missouri’s

criminal code. See Section 570.030, RSMo (2016).6 The WPA statutorily defines “protected

person” to include the simple reporting to the proper authorities of an “unlawful act of his or her

employer[.]” Section 285.575.2(4). The WPA defines “proper authorities” to include “the

employee’s supervisor . . . employed by the employer[.]” Section 287.575.2(3); see also

Drummond, 358 S.W.3d at 171 (quoting Faust, 954 S.W.2d at 391, abrogated by Fleshner, 304

6
 Section 570.030 provides in the relevant part: “A person commits the offense of stealing if he or she: (1)
[a]ppropriates property or services of another with the purpose to deprive him or her thereof, either without his or
her consent or by means of deceit or coercion[.]” Section 570.030.1(1), RSMo (2016).

 17
S.W.3d 81) (“[T]o effectuate the clear mandate of public policy implicated in a given situation, it

is axiomatic that the at-will employee report or ‘blow the whistle’ to the proper authorities,

which, depending on the circumstances, would include the employer, ‘internal whistleblowing,’

and/or a third-party authority, ‘external whistleblowing.’”). Yount has alleged that he reported

an “unlawful act” to his supervisors, who constitute “proper authorities” under the WPA,

therefore satisfying the first category within the definition of “protected person.” See Section

282.585.2(3)–(4). Yount’s allegations thus state a claim under the WPA and require no further

public policy analysis. See Jaeger, 605 S.W.3d at 589 (internal quotation omitted) (noting “[i]f

the petition contains any facts that, if proven, would entitle the plaintiff to relief, then the petition

states a claim”).

 Keller counters that Yount’s factual allegations cannot amount to stealing even at the

pleading stage because, as the circuit court found, the Petition indicates Keller consented to the

theft in that Keller could have chosen to ignore or consent to the taking of its property by its

employees. See Margiotta, 315 S.W.3d at 347 (internal citation omitted) (“Generally, there is no

whistleblowing protection for an employee who merely disagrees personally with an employer’s

legally-allowed policy.”); see also Yerra, 536 S.W.3d at 351 (citing Newsome v. Kan. City, Mo.

Sch. Dist., 520 S.W.3d 769, 779 (Mo. banc 2017)) (noting “it is essential that a reported

act did violate public policy, not merely that the plaintiff so believed, even if [his or] her belief

was reasonable”). However, we give the facts in the Petition their broadest intendment and

construe them in the light most favorable to Yount. See Peters , 489 S.W.3d at 789 (internal

citation omitted); Jaeger, 605 S.W.3d at 589 (internal citation omitted). Yount’s Petition avers

that he reported to his supervisors that coworkers took company property without permission for

personal use. Yount further alleges the supervisor to whom he reported the theft instructed

 18
Yount not to report the theft to Yount’s other supervisor or to any members of management.

Yount’s Petition pleads that the supervisor who ultimately terminated him for reporting the

coworker theft sought to cover up the thefts and enlist Yount in doing the same. We

acknowledge that Yount also pleads he reported the theft to Keller’s owners, who apparently did

not act upon the report. Yet Yount alleges that one of Keller’s owners informed Yount that his

allegation was serious and that he would “take care of it.” Viewing the Petition’s timeline of

events and facts therein in the light most favorable to Yount, Yount’s Petition contains facts that,

if true, could demonstrate Keller did not clearly consent to the taking of its property. See Jaeger,

605 S.W.3d at 589 (internal citation omitted). The factual allegations within Yount’s Petition do

not definitively make the stealing statute inapplicable. See Jones, 478 S.W.3d 556 at 568.

Accordingly, the Petition sufficiently states a claim under the WPA by pleading that Yount is a

“protected person” under the WPA for reporting unlawful theft by his co-employees.

 The circuit court’s application of the definition of employer in Section 285.575.2(2) to

exclude whistleblower protection for those employees who report unlawful acts or serious

misconduct of co-employees runs afoul of Missouri’s well-established public-policy

whistleblower protection jurisprudence and the legislature’s express intent to retain such

common-law protections. See Section 285.575.3; Drummond, 358 S.W.3d at 171 (citing

Fleshner, 304 S.W.3d at 97 n. 13). The circuit court erred by concluding that the definition of

“employer” meant Yount, who reported alleged coworker theft to his supervisors, could not be a

“protected person” under the WPA. Therefore, we hold the circuit court erred in dismissing the

Petition for failure to allege facts that could support a claim under the WPA. We grant the point

on appeal. Accordingly, we reverse the circuit court’s dismissal of the Petition. See Jaeger, 605

S.W.3d at 589 (internal citation omitted).

 19
 Conclusion

 The judgment of the circuit court is reversed. We remand the matter to the circuit court

to reinstate the Petition and continue proceedings consistent with this opinion.

 _________________________________
 KURT S. ODENWALD, Presiding Judge

Kelly C. Broniec, J., concurs.
John P. Torbitzky, J., concurs.

 20